**GEORGE L. HASSELBACK, ESQ.**
O'Connor Berman Dotts & Banes
Second Floor, Marianas Business Plaza
P.O. Box 501969
Saipan, MP 96950-1969
Telephone No. (670) 234-5684
Facsimile No. (670) 234-5683

*Attorneys for Plaintiff Hye Lin Shin*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| **HYE LIN SHIN,** ) | **CIVIL ACTION NO.: 08-0022** |
| ) | |
| Plaintiff, ) | **REPLY IN SUPPORT OF MOTION** |
| v. ) | **FOR SUMMARY JUDGMENT** |
| ) | |
| **YOU RIM CORPORATION,** ) | Judge: Hon. Alex R. Munson |
| ) | Date:   September 11, 2008 |
| Defendant. ) | Time:   9:00 a.m. |
| ) | |

**I. INTRODUCTION.**

Plaintiff, by and through counsel, offers this Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment. This Reply is supported by the following argument and authorities, any and all papers on file with this Court and any and all argument to be adduced at the hearing of Plaintiff's Motion.

Plaintiff's Motion should be granted in full. Plaintiff has standing under CNMI law to bring this action as the person to which the Check was written.[1] Furthermore, Plaintiff has not failed to join any indispensable parties to this suit, as Defendant is at no risk for double-recovery on the check. Furthermore, since there is no requirement of scienter in the CNMI Bad

Checks Act, Defendant has not established any genuine issues of material fact and Plaintiff is due a judgment as a matter of law. Also, there is no reason for this Court to abstain from hearing this Motion. Finally, there is no reason to certify any questions to the CNMI Supreme Court for resolution as there are no legitimate legal issues in this case to so certify.

In short, Defendant has thrown everything into its Opposition with the exception of the proverbial kitchen sink. None of this, however, changes the fact that Defendant wrote a bad check. This Court should grant summary judgment in favor of Plaintiff.

## II. ARGUMENT.

Plaintiff's Motion should be granted in full.

**A. Plaintiff has standing to bring this suit.**

First, Defendant argues that Plaintiff has no standing to bring this lawsuit. Defendant's Opposition at 4-6. In doing so, Defendant begins by citing several cases that stand for the general proposition that a plaintiff must meet minimum standing requirements before this Court may hear any case brought by it.[2] Plaintiff does not disagree that she must meet minimum standing requirements, but will insist that she has met the minimum requirements for standing because CNMI law vests her with such standing in its Bad Checks Act of 1984, 7 CMC § 2441, *et seq.* ("the Bad Checks Act").

---

[1] For sake of brevity, Plaintiff will continue to refer to the check that is at issue in this case as "the Check," as was done in Plaintiff's Memorandum in Support of Summary Judgment.

[2] Specifically, Defendant cites *Cantrell v. City of Long Beach,* 241 F.3d 674 (9th Cir. 2001) and *Lujan v. Defenders of Wildlife,* 504 U.S. 55 (1992).

A plain reading of the Bad Checks Act shows that:

> Any person, who makes, utters, draws or delivers any check, payment of which is refused or dishonored due to lack of funds or credit to pay…shall be liable to the payee [for certain damages].

7 CMC § 2442 (a) (emphasis added). By a plain reading of this statute, a "payee" is able to sue "in small claims court or any other appropriate court" for the specific relief that the statute provides. *Id*. The Bad Checks Act unambiguously vests the right to sue (standing) in the "payee" of the bounced check.[3] Who then, is the "payee?" While the Bad Checks Act and other statutes of the CNMI do not define "payee" specifically, 5 CMC § 3110 does provide some guidance.[4] It says that an instrument (like the Check) is:

> …payable to order" when "by its terms it is payable to order…of any person therein specified with reasonable certainty…[and that] it may be payable to the order of … [a] payee who is not the maker [of the instrument].

5 CMC § 3110. The Check was made payable to Plaintiff. *See* Exhibit A to Plaintiff's Motion for Summary Judgment. She is the "payee" on the Check.

Defendant tries to obfuscate this very straight-forward issue of standing by arguing that the supplemental definition of "payee" contained in the Bad Checks Act narrows this generally accepted definition of "payee." Defendant's Opposition at 5-6. It does so by arguing that the language that says "payee … includes any transferee of the payee," somehow narrows the scope of who may bring suit under the Bad Checks Act. *Id.* The Defendant argues that, when read

---

[3] The CNMI Supreme Court, when interpreting another issue regarding the Bad Checks Act, specifically stated that it would "construe statutory language according to its plain-meaning where it is clear and unambiguous." *Town House Inc. v. Saburo, et al.* 2003 MP 2 at ¶ 11 (internal citations omitted).

3

along with the portions of the Uniform Commercial Code ("U.C.C.") adopted by the CNMI Legislature, the Bad Checks Act will *only* permit a transferee of a bad check to sue, if such a person exists. *Id.* In other words, Defendant argues that since Plaintiff transferred the check to someone else, the Bad Checks Act divested her of all rights to sue if the check was dishonored due to lack of sufficient funds. It does not.

The CNMI Legislature decided that the term "payee" (as used in the Bad Checks Act), "*includes* any transferee of the payee." 7 CMC § 2442 (c) (emphasis added). The operative word in this portion of the Bad Checks Act is "*includes*." This very plain language does not narrow the definition of "payee" as Defendant would suggest, but rather expands it in the case where, as here, a payee of a check may have indorsed the check over to a third-party. Nothing in the Bad Checks Act divests the initial payee of a check of standing to sue if he, she or it has subsequently transferred the check in question over to someone else. The plain language of the Bad Checks Act *includes* transferees under the umbrella of who has standing to sue, but does not *un-include* any initial payee if such a transfer has taken place.

Defendant's citation to portions of the U.C.C. that allow for a remedy for dishonored instruments (including checks), should not persuade this Court that Plaintiff lacks standing. The applicable U.C.C. remedies for a bounced check are parallel to those offered by the Bad Checks Act. These two separate statutes, offer two separate avenues for someone who is wronged by a bounced check to seek redress. Had the CNMI Legislature wanted the Bad Checks Act to be

---

[4] Of course, the logical definition of "payee" would be the person intended to be paid by the instrument, but Plaintiff would like to remove any ambiguity from this term as Defendant is proffering a very tortured definition of it.

4

bound by, or interpreted strictly according to, the dictates of the U.C.C., it could very well have said so, but did not. The Bad Checks Act is a stand-alone statute that vests standing without reference to the U.C.C. The Defendant's conflation of these two statutes for the purposes of arguing a lack of standing is misplaced and should not influence this Court's decision.

Finally, it should be telling that the only case citation that Defendant proffers in support of its argument that Plaintiff lacks standing is *TRW Title Ins. Co. v. MCD Mortgage Center, Ltd.*, 1992 WL 77733 (N.D. Ill. 1992). Defendant does not bother to explain to this Court why a sixteen-year-old, unpublished decision from the Northern District of Illinois, that interprets an Illinois law ***that is not even a comparable "bounced checks" statute***, would have any bearing upon the interpretation of the CNMI's Bad Checks Act. *TRW* interprets an application of Illinois's version of the U.C.C. *Id.* It does not offer any guidance on who has standing in a separate "bounced checks" statute…especially the CNMI's. The citation of such an inapplicable case should make this Court very wary of Defendant's argument that Plaintiff does not have standing. According to the plain language of the CNMI's Bad Checks Act, she does. This Motion should be granted in full.

**B. Rule 19 should not impede this Court's determination of this Motion.**

Next, Defendant argues that summary judgment should not be granted because (it says) Plaintiff has failed to join indispensable parties according to Federal Rule of Civil Procedure 19 and it will be prejudiced thereby. Defendant's Opposition at 6-9.

**1. Defendant has not met its burden of persuasion in its opposition.**

Defendant argues that Joy Enterprises is an indispensable party to this suit, that it must be joined via Rule 19, that its presence would destroy diversity and, therefore, this suit must be dismissed for lack of jurisdiction. In doing so, Defendant cites *In re: DIET DRUGS (Phentermine, Fenfluramine, Dexfenfluramine) Products Liability Litigation*, 2001 WL 34129592 (E.D. Pa. 2001). Defendant says that this case stands for the proposition that:

> When an absent party has an interest in a check, that party is indispensable to any dispute concerning the check.

Defendant's Opposition at 7. First and foremost, Defendant has failed to meet its burden of persuasion, by again citing an unreported decision from an foreign jurisdiction that is factually distinguishable from the case at bar. The *In re: DIET DRUGS* case concerned an attorney who was claiming that he had an interest in the proceeds of a lawsuit, because he had done significant work for a client and then been discharged and replaced by another attorney. *In re: DIET DRUGS* at 1. Here, we have an individual who was given a bad check and who is suing under a statute that vests in her a distinct, and independent, right of action. Defendant does not tell this Court why this case should be compared to ours, and followed. Nor does Defendant tell this Court why that decision should impact the application of the CNMI Bad Checks Act. It should not.

**2. CNMI law shields Defendant from double payment on the Check.**

Defendant's entire argument that there are indispensable parties arises from its complaint that it might have to pay twice on the same check. Opposition at 7-9. While the CNMI Bad Checks Act offers an expedited (and Plaintiff would argue parallel) set of remedies for a person wronged by the passage of a bad check, the CNMI has also adopted portions of the

6

U.C.C. that would act to shield Defendant from any double-payment on the Check. In particular, 5 CMC § 3606, entitled "Payment or Satisfaction" states, in full, that:

> The liability of any party is discharged to the extent of his payment or satisfaction to the holder even though it is made with knowledge of a claim of another person to the instrument unless prior to such payment or satisfaction the person making the claim either supplies indemnity deemed adequate by the party seeking the discharge or enjoins payment or satisfaction by order of a court of competent jurisdiction in an action in which the adverse claimant and the holder are parties.

So then, if Defendant were to be ordered by this Court to pay Plaintiff under the Bad Checks Act, it could turn to 5 CMC § 3606 as a complete defense to any further claimants to the Check. If payment on an instrument *were not* a defense to a later claim against the same instrument (either by the initial payee or a third-party transferee), the entire system of negotiable instruments would break down. In that scenario, which Defendant fears, subsequent transferees could sue on a single check an infinite number of times…again and again and again. That is plainly ludicrous, and not contemplated by CNMI law. Defendant's fear of multiple liabilities is groundless, and should not convince this Court that other parties are indispensable to this lawsuit.[5]

**C. The question of Defendant's "intent" at the time the Check was written is nothing more than a red herring.**

Next, Defendant attempts to create genuine issues of material fact by inventing a scientier requirement in the CNMI Bad Check Act, and arguing that issues of fact remain

---

[5] Furthermore, Defendant greatly underestimates the ability of this Court to fashion relief that would protect Defendant from double recovery on the check. If this Court found for Plaintiff, and ordered payment be made on the Check, it could make a specific finding that such was "Payment or Satisfaction" pursuant to 5 CMC § 3606. This would shield Defendant from any double-payment on the check.

7

regarding Defendant's intent at the time the check was written.  Defendant's Opposition at 9-10.

Specifically, Defendant begins the line of argument by saying:

> …it appears that the law does not impose strict liability, but applies only in the circumstance when a person "makes, utters, draws or delivers" a worthless check.  In other words, the check must be worthless at the time the person makes, utters draws or delivers the check ***and the person making, uttering drawing or delivering the check knows it is worthless at that time.***

Defendant's Opposition at 9 (emphasis added).  Defendant is arguing that the Bad Checks Act requires a plaintiff to prove that the person writing the bad check knew, at the time the check was written, that the funds would not be available.  Where does Defendant find this requirement?  It did not find it in the language of the Bad Checks Act, as it is 100% silent as to any requirement of intent or knowledge on the part of the party bouncing the check.  7 CMC § 2441, *et seq.*  Put simply, Defendant has invented this requirement out of whole cloth to serve its own ends.

Not satisfied with inventing a scienter requirement, Defendant goes even farther and says, point-blank, that "[t]his construction is consistent with the legislative intent regarding the statute."  In fact, the Defendant says that "[t]he legislative intent indicates that the BCA is aimed at the **intentional** passing of "bad checks" and is not a strict liability statute" and points to the Commission Comment to 7 CMC § 2441 as buttressing this contention.  Defendant's Opposition at 10 (emphasis included in original).  Given that, this Court should consider the full language of that Comment, which Defendant conveniently decided to omit from its brief.  It says, in its entirety, that:

> The Commonwealth Legislature finds it necessary to enact legislation to protect citizens and local businesses from habitual, repetitious, and irresponsible individuals who pass bad checks.

Commission Comment to 7 CMC § 2441 (repeating the exact language of the CNMI Legislature's "Findings" section of Public Law 4-35 that passed into law the Bad Checks Act). Where is the reference to "intentional" passing of bad checks? Where is the support for Defendant's argument that the Legislauture meant "intentional" passing of bad checks? Where is the word "intentional," the word "intent" or any other reference to an intent requirement? Simply put…nowhere.

The notion that the Bad Checks Act was intended to only cover "intentional" passing of bad checks is a complete fabrication on the part of Defendant. It has cited absolutely no authority that stands for this proposition. In its attempt to avoid summary judgment, Defendant has seen fit to do whatever it can, up to an including the complete creation of non-existant legal standards under the Bad Checks Act. Put simply, the Bad Checks Act says nothing at all about intent, and, as such, Defendant's intent cannot create a genuine issue of material fact sufficient to overcome summary judgment. Defendant does not like the law, so it is trying to change it on its own initiative. This Motion should be granted in full.

**D. This Court should not abstain from deciding this Motion.**

Next, Defendant attempts to convince this Court that it should abstain from further involvement in this case while a related case is pending in the CNMI Superior Court. Defendant's Opposition at 11. Curiously, while Defendant cites several cases that involve judicial abstention, including reference to a case where this Court has abstained in the past, it never really tells anyone *why* abstention is proper in this case. In fact, there is no analysis of the cited cases or application of these cases to this case at all. Defendant merely says that this Court

"should abstain from entertaining this case in light of the pending Superior litigation involving the underlying assessment," cites its cases ***and does nothing else.*** Without any such analysis, Plaintiff is at a loss in how to respond to this unsupported proposition.[6]

While Defendant points this Court to its previous decision in *Natl. Union Fire Ins. Co. of Pittsburgh, Penn. v. Bank of Saipan,* which explicitly recognizes that "abstention is the exception and not the rule," (2003 WL 2299731 (D.N.Mar.I.)) it fails utterly to explain why this is the type of case where this Court should exercise the extraordinary measure of abstaining from hearing this suit. Defendant's Opposition at 11. All Defendant says is that "[t]his Court has previously abstained from entertaining a dispute based on local law when a related case was pending in the Superior Court." *Id.* What Defendant does not say is that this is not a case that disposition thereof would implicate an ongoing "court-approved rehabilitation plan" for a major local bank and implicate complicated issues of CNMI banking law. *Natl. Union* at 3. In fact, Defendant does not discuss ***any*** of the *Younger* abstention factors, much less prove to this Court that they apply here. Plaintiff would submit that such a halfhearted argument does not overcome the general presumption against judicial abstention.[7]

---

[6] Although Plaintiff will address the cases cited by Defendant, Plaintiff will not attempt to divine the analysis that Defendant could, or indeed should, have included in this portion of its Opposition. Plaintiff anticipates, however, that Defendant will present this analysis before this Court at oral argument. Plaintiff would submit that this would be an unfair and impermissible attempt at "sandbagging" that should not be countenanced by this Court. To allow such argument to be presented would rob Plaintiff of any meaningful way to respond to such arguments in writing. Defendant had the chance to present whatever argument it wanted in its Opposition and should be made to live with the choices it made.

[7] Likewise Defendant does not explain why this Court's abstention in *In re Realty Trust Corp.* should bear upon this case when it involved the application of the CNMI Constitution's Article 12. Complex issues of land ownership are a far cry from the straightforward application of the Bad Checks Act. In so failing to explain, Defendant has not overcome the presumption against abstention and this Court should refrain from doing so.

Defendant has not explained why this Court should take the extraordinary step in deciding to abstain from hearing this case. Therefore, this Court should decide this case.

**E. There are no legitimate questions of law to certify to the CNMI Supreme Court.**

Finally, much as it did with the question of abstention, Defendant argues that this Court should exercise its discretion and certify certain issues for determination to the CNMI Supreme Court. In support of this argument, Defendant string-cites several cases where this Court has done so in the past, but again, does not offer any comparison or analysis between these cases and the case at bar.[8] Defendant says that two pressing issues demand determination by the CNMI Supreme Court and that this Court should not proceed with this case unless and until these two issues are settled. Opposition at 12. Defendant, however, has made mountains out of molehills with these issues. In other words, they are not as complicated and unsettled as Defendant claims, and they do not warrant certification to the CNMI Supreme Court and the delay in disposition of this case.

In particular, the issues certified to the CNMI Supreme Court by this Court in the cases cited by Defendant involved legitimate issues of local law that were open to various interpretations, and unsettled by the CNMI Supreme Court. First, in *U.S. v. Borja*, this Court thought it better that the CNMI Supreme Court answer the question "[i]s the "Municipality of Tinian" a chartered municipality such that it can sue and be sued?" 2003 MP 8 at ¶ 1. This was an important and contested question that implicated fundamental issues pertaining to the

---

[8] Specifically, Defendant cites *United States v. Borja,* 2003 MP 8, *Bank of Saipan v. Carlsmith Ball Wichman Case & Ichiki,* 1999 MP 20 and *Sonoda v. Cabrera,* 1997 MP 5.

construction of the CNMI Constitution and this Court properly decided that the CNMI Supreme Court should be the body that interprets it.  Similarly, in *Bank of Saipan v. Carlsmith Ball Wichman Case & Ichiki,* this Court thought it more proper for the CNMI Supreme Court to answer the question of whether various claims arising out of a legal malpractice case fell under the CNMI two-year statute of limitation for injuries to a person or the general six-year statute of limitations. 1999 MP 20 at ¶ 1.  Whether the two, or six-year statute of limitations applied was a valid and hotly debated argument that, rightfully, should have been decided by the CNMI Supreme Court.  Finally, in *Sonoda v. Cabrera,* another question involving the construction of the CNMI Constitution was certified, this one involving the proper exercise of the Governor's executive powers.  Each of these cases illustrates a situation where this Court, rightfully, decided that legitimate questions of legal interpretation should be answered by the CNMI Supreme Court prior to the disposition of a case before it.

Here, however, Defendants "issues" that it claims must be decided by the CNMI Supreme Court, are not as legitimate as Defendant would have this Court believe.  First, Defendant says that:

> [i]t is unresolved under Commonwealth law whether a Payee that transfers its right in a check to a third party retains any right to bring suit under [the Bad Checks Act] based upon the subsequent dishonor of the check.

Opposition at 12.  As explained previously, Defendant offers no proof or citation that would suggest the plain language of the Bad Checks Act would raise such an issue. The language of the Bad Checks Act that includes transferees of an instrument under the definition of "payee" does not, in any way, suggest that it excludes an original payee once a transfer is made.

Plaintiff will not re-argue this issue here, but rather would direct this Court to the argument in the "standing" portion of this brief.

Next, Defendant again raises the spurious argument that there is a scienter requirement under the Bad Checks Act. It argues that:

> [T]he Commonwealth Supreme Court has not decided whether the legislative intent of the [Bad Checks Act] limits its application and penalties to a person who intentionally makes, utters, draws or delivers a bad check or whether … [that person] … must know that the check is bad or worthless at the time it is made, uttered, drawn or delivered.

Opposition at 12. The suggestion that this invented scienter requirement, the existence of which is completely unsupported in either the language of the Bad Checks Act or any recording of the legislative intent behind it, should be certified to the CNMI Supreme Court for determination strains credulity to the breaking point. Why not certify the question of whether the Bad Checks Act only applies to parties with blue eyes? This argument has as much support as Defendants "unanswered questions" about an intent requirement in the Bad Checks Act. As explained previously, this requirement does not exist and there is no reason to believe it does. This Court should not delay disposition of this case because of this spurious argument.

### III. CONCLUSION.

The Defendant bounced a check. Under CNMI law, Plaintiff is entitled to the value of the Check, 12% per annum in interest and her attorney's fees. There are no genuine issues of any material fact and Plaintiff is due a judgment as a matter of law. This Court should immediately enter an Order granting summary judgment to Plaintiff on her claims and ordering Defendant to pay Plaintiff $207,474.79 (the amount of the check plus statutory interest),

13

$250.00 in attorney fees and $15.00 in additional damages for the fee charged by the Bank of Guam.

Dated: September 8, 2008                Respectfully submitted:

                                                                        O'CONNOR BERMAN DOTTS & BANES
                                                                        Attorney for Plaintiff

                                                                        By: _____/s/_____
                                                                              GEORGE L. HASSELBACK, ESQ.

2542-11-080722-MemSuppMtnSummJdgmt-glh.doc